Johanson, J.
¶1 Wyatt Taylor Seward appeals the imposition of legal financial obligations (LFOs) following his guilty plea conviction for second degree assault. He argues that (1) the imposition of mandatory LFOs under RCW 43.43.7541 (deoxyribonucleic acid (DNA) collection fee), RCW 7.68.035 (victim penalty assessment (VPA)), and RCW 36.18.020(2)(h) (filing fee) without first considering his current or likely future ability to pay violated his substantive due process rights, (2) the LFO collection process does not comply with the constitutional safeguards established in State v. Blank, 131 Wn.2d 230, 930 P.2d 1213 (1997), and (3) RCW 10.01.160(3) applies to the DNA collection fee, the VPA, and the filing fee even though they are mandatory. He also requests that we not impose appel *582 late costs.[1] We reject Seward’s arguments and affirm the LFOs, but we exercise our discretion to not impose appellate costs.
FACTS
¶2 On March 6, 2015, Seward pleaded guilty to a second degree assault charge. During the plea colloquy, Seward’s counsel requested that the trial court delay the sentencing hearing until May 1 because Seward, who had a wife and two children and was currently employed, needed to “get his affairs in order.” Report of Proceedings (RP) (Mar. 6, 2015) at 12.
¶3 At the May 1 sentencing hearing, the State requested that the trial court impose the $500 VPA, the $100 DNA collection fee, and $200 in “court costs.” RP (May 1, 2015) at 9. The State did not ask the trial court to impose any other LFOs.
¶4 The trial court imposed a 120-month sentence. It also ordered Seward to pay a total of $800 in mandatory LFOs: (1) a $200 criminal filing fee under RCW 36.18.020(2)(h),[2] (2) a $500 VPA under RCW 7.68.035,[3] and (3) a $100 DNA *583 collection fee under RCW 43.43.7541.[4] The trial court later imposed $28,563.84 in restitution. There is nothing in the record showing that Seward objected to any LFOs. Nor is there anything in the record showing that the trial court considered Seward’s current or potential future ability to pay any LFOs. Seward appeals his LFOs.
ANALYSIS
I. Due Process
¶5 Seward argues that the imposition of mandatory LFOs under RCW 43.43.7541, RCW 7.68.035, and RCW 36.18.020(2)(h), without first establishing that he had or will have the ability to pay, violated his substantive due process rights because there is no rational basis for imposing costs against those who cannot pay. We disagree.[5]
*584 A. Legal Principles
¶6 Statutes are presumed constitutional, and it is Seward’s burden to establish that a due process violation occurred. State v. McCuistion, 174 Wn.2d 369, 387, 275 P.3d 1092 (2012); Blank, 131 Wn.2d at 235. We review alleged due process violations de novo. State v. Mullen, 171 Wn.2d 881, 893, 259 P.3d 158 (2011).
¶7 The Fifth and Fourteenth Amendments to the United States Constitution and article I, section 3 of the Washington Constitution mandate that no person may be deprived of life, liberty, or property without due process of law. Where, as here, the interests at stake are not fundamental rights,[6] we apply the most lenient and highly deferential review standard—the rational basis standard. Nielsen v. Dep’t of Licensing, 177 Wn. App. 45, 53, 309 P.3d 1221 (2013).
¶8 Under rational basis review, we determine whether a rational relationship exists only between the challenged law and a legitimate state interest. Nielsen, 177 Wn. App. at 53. In applying this standard, we may “ ‘assume the existence of any necessary state of facts which [we] can reasonably conceive in determining whether a rational relationship exists between the challenged law and a legitimate state interest.’ ” Nielsen, 177 Wn. App. at 53 (alteration in original) (quoting Amunrud v. Bd. of Appeals, 158 Wn.2d 208, 222, 143 P.3d 571 (2006)). Unlike when we apply strict scrutiny, narrow tailoring is not required under a rational basis review. See Nielsen, 177 Wn. App. at 53.
B. Rational Basis
¶9 Seward acknowledges that (1) the DNA collection fee serves the legitimate state interest of funding the collection, analysis, and retention of convicted offenders’ DNA *585 profiles to facilitate future criminal identifications, (2) the VPA serves the legitimate state interest of funding comprehensive programs to encourage and facilitate testimony by victims and witnesses of crimes, and (3) the filing fee serves the legitimate state interest in compensating the court clerks for their official services. But Seward argues that imposing the fees on offenders without first determining whether the offenders have the current or potential future ability to pay does not rationally serve these interests. He argues it is unlikely the fees will be collected if the offender does not have the ability to pay, and imposing and attempting to collect fees and assessments from those who cannot pay is harmful to the offenders, creates no legitimate economic incentive, and serves no legitimate purpose.
¶10 We hold that the DNA collection fee, the VPA, and the filing fee are rationally related to the legitimate state interests described above in two ways. First, imposing these fees and the assessment on all felony offenders without first considering their ability to pay is rationally related to legitimate state interests because even though some offenders may be unable to pay, some will. So the imposition of these fees and assessments on all offenders creates funding sources for these purposes.
¶11 Second, imposing these fees and the assessment on offenders who may be indigent at the time of sentencing is also rationally related to funding these purposes because the defendant’s indigency may not always exist. We can conceive of situations in which an offender who is indigent at the time of sentencing will be able to pay the fees and assessments in the future. So it is not unreasonable to believe that imposing these fees and assessments on all indigent offenders would result in some funding for these purposes. Accordingly, Seward fails to show that there is no rational relationship between imposing these mandatory *586 fees and assessments against all offenders, and his due process argument fails.[7]
II. Compliance with Blank’s Constitutional Safeguards
¶12 Seward next argues that the current LFO schemes do not meet the “necessary constitutional safeguards established in Blank” Br. of Appellant at 10. He argues that Blank established that the constitutionality of Washington’s LFO statutes depended on the trial court conducting an ability to pay inquiry at certain key points. The first is when collection has begun and sanctions are sought for nonpayment. The second is when the State seeks to impose an additional penalty for failure to pay. And the third is before enforced collection or any sanction is imposed for nonpayment. He contends that under the current collection schemes, payment, interest, and penalties can commence immediately after sentencing, so the court must conduct the ability to pay analysis at sentencing.
¶13 In Blank, our Supreme Court held that “before enforced collection or any sanction is imposed for nonpayment, there must be an inquiry into ability to pay.” 131 Wn.2d at 242. Blank does not, however, require that the inquiry into ability to pay take place before the LFOs are imposed in a judgment and sentence. Although Seward asserts that enforced collections and sanctions immediately follow the entry of the judgment and sentence, nothing in the record supports this argument.[8] Because the record does not support Seward’s assertions, this argument fails.
*587 III. Application of RCW 10.01.160(3)
¶14 Seward further argues that the trial court erred in failing to comply with RCW 10.01.160(3)’s requirement that the court consider the offender’s ability to pay before imposing LFOs. He contends that although the DNA collection fee, the VPA, and the filing fee statutes purport to impose mandatory fees and assessments, “these [statutes] must be harmonized with RCW 10.01.160(3).” Br. of Appellant at 19. We disagree.
¶15 We have rejected this identical argument insofar as it relates to the DNA collection fee and the VPA in State v. Mathers, 193 Wn. App. 913, 918-21, 376 P.3d 1163, review denied, 186 Wn.2d 1015 (2016). Furthermore, although Mathers does not address the filing fee, we hold that the same analysis applies with equal force. Thus, for the reasons stated in Mathers, this argument fails.
IV. Appellate Costs
¶16 Finally, in his supplemental brief, Seward argues that if the State requests appellate costs, we should deny the request. He notes that (1) he was appointed counsel because of his indigency, (2) he received a 120-month sentence, (3) “it is reasonable to presume he remains indigent throughout this review,” (4) he owes more than $28,000 in restitution, and (5) imposing additional obligation of appellate costs will unjustly increase his financial burden. Suppl. Br. of Appellant at 10. The State responds that there is no basis to waive appellate costs.
¶17 In light of Seward’s current indigent status, our presumption under RAP 15.2(f) that he remains indigent “throughout the review” unless the trial court finds that his financial condition has improved, and the fact that he will have significant debt due to the restitution award upon his *588 release, we exercise our discretion and waive appellate costs. RCW 10.73.160(1).[9]
¶18 We affirm the imposition of the mandatory LFOs and waive appellate costs.
Lee, J., concurs.

 Although Seward did not make this request in his original briefing, he has moved for permission to include this issue. We grant this motion and consider whether to impose appellate costs below.
Seward also argues in his supplemental brief that the filing fee was a discretionary fee subject to RCW 10.01.160(3). Seward did not raise this issue in his original briefing. Seward has not moved for permission to raise this additional issue. Accordingly, we do not address this newly raised issue.

 RCW 36.18.020(2)(h) provides,
Upon conviction or plea of guilty, upon failure to prosecute an appeal from a court of limited jurisdiction as provided by law, or upon affirmance of a conviction by a court of limited jurisdiction, an adult defendant in a criminal case shall be liable for a fee of two hundred dollars.
(Emphasis added.) The legislature amended RCW 36.18.020(2)(h) in 2015, changing the phrase “a defendant in a criminal case” to “an adult defendant in a criminal case.” Laws of 2015, ch. 265, § 28. Because this amendment does not affect this case, we cite to the current version of the statute.

 RCW 7.68.035(l)(a) provides,
*583 When any person is found guilty in any superior court of having committed a crime, except as provided in subsection (2) of this section, there shall be imposed by the court upon such convicted person a penalty assessment. The assessment shall be in addition to any other penalty or fine imposed by law and shall be five hundred dollars for each case or cause of action that includes one or more convictions of a felony or gross misdemeanor and two hundred fifty dollars for any case or cause of action that includes convictions of only one or more misdemeanors.
(Emphasis added.) The legislature amended RCW 7.68.035 in 2015. Laws of 2015, ch. 265, § 8. Because this amendment is not relevant to the issues in this case, we cite to the current version of the statute.

 RCW 43.43.7541 provides in part,
Every sentence imposed for a crime specified in RCW 43.43.754 must include a fee of one hundred dollars. The fee is a court-ordered legal financial obligation as defined in RCW 9.94A.030 and other applicable law.
(Emphasis added.) The legislature amended RCW 43.43.7541 in 2015. Laws of 2015, ch. 265, § 31. Because this amendment is not relevant to the issues in this case, we cite to the current version of the statute.

 We exercise our discretion under RAP 2.5 to address this issue. See State v. Blazina, 182 Wn.2d 827, 834-35, 344 P.3d 680 (2015) (“RAP 2.5(a) grants appellate courts discretion to accept review of claimed error not appealed as a matter of right.’’).

 The parties agree that no fundamental right is at issue.

 Although previous cases, State v. Curry, 118 Wn.2d 911, 917-18, 829 P.2d 166 (1992), and State v. Mathers, 193 Wn. App. 913, 918-21, 376 P.3d 1163, review denied, 186 Wn.2d 1015 (2016), address and reject similar due process arguments, neither of these cases address the exact argument Seward presents—whether imposing mandatory fees or assessments on defendants before determining whether they have the current or likely future ability to pay these fees rationally serves the State’s legitimate interests.

 For instance, there is no notation on the judgment and sentence showing that Seward was required to start paying his LFOs.

 The legislature amended RCW 10.73.160(1) in 2015. Laws of 2015, ch. 265, § 22. This amendment removed references to juvenile offenders and is not relevant to our analysis. Accordingly, we cite to the current version of the statute.