# IN THE COURT OF APPEALS FOR THE STATE OF WASHINGTON

| | |
|---|---|
| STATE OF WASHINGTON,<br><br>               Respondent,<br><br>v.<br><br>NORMAN EUGENE KELLY,<br><br>               Appellant. | No. 75268-5-I<br><br>DIVISION ONE<br><br>UNPUBLISHED OPINION<br><br>FILED: January 16, 2018 |

Court of Appeals Div I State of Washington — Filed 2018 Jan 16 AM 11:23

LEACH, J. — For the first time on appeal, Norman Kelly challenges the constitutionality of the mandatory crime victim penalty assessment (VPA) and the deoxyribonucleic acid (DNA) testing fee as applied to him. He also challenges the trial court's imposition of a DNA fee without considering the effect of his mental health condition on his ability to pay. His constitutional challenge is not ripe for review and the claimed error does not constitute manifest constitutional error under RAP 2.5(a). Generally, the trial court must consider a defendant's ability to pay even most mandatory legal financial obligations (LFOs) when the defendant suffers from a mental health condition. We affirm in part and remand to the trial court for it to consider whether Kelly has a mental health condition that would require it to determine whether he has the ability to pay the DNA fee.

## BACKGROUND

In January 2016, the State charged Kelly with possession of methamphetamine. The trial court ordered a competency evaluation. The

evaluator determined that Kelly was competent. The evaluator also documented Kelly's past head injuries, psychological diagnoses, prescription drug use, and substance abuse issues. A jury convicted Kelly of possession. During the sentencing hearing in May 2016, the trial court acknowledged that Kelly's mental health issues, his homelessness, and chemical dependency all contributed to his commission of the offense. The court imposed an 18-month sentence. In addition, the court imposed the mandatory $500 VPA under RCW 7.68.035(1)(a) and the mandatory $100 DNA testing fee under RCW 43.43.690. Kelly did not object. The court waived all other costs and fees because it found Kelly was indigent. Kelly challenges the trial court's imposition of the LFOs on appeal.

ANALYSIS

Substantive Due Process

For the first time on appeal, Kelly challenges the constitutionality of the imposition of the mandatory VPA and the mandatory DNA fee on indigent defendants at sentencing. He asserts that his claim is ripe for review and is reviewable by this court as manifest constitutional error under RAP 2.5(a)(3). We disagree.

Kelly asserts that the VPA and the DNA fee statutes violate substantive due process when applied to defendants absent a showing that the defendants have the ability or likely future ability to pay. We held in State v. Shelton[1] that this

---

[1] 194 Wn. App. 660, 674, 378 P.3d 230 (2016), review denied, 187 Wn.2d 1002 (2017); see also State v. Curry, 118 Wn.2d 911, 917, 829 P.2d 166 (1992);

challenge is not ripe for review until the State attempts to collect the fee because the facts relevant to the claim are not fully developed. No evidence in the record indicates enforced collections, sanctions, or other negative consequences of Kelly's criminal debt. We reject Kelly's attempt to distinguish his case from Shelton and adhere to that decision. Thus, we conclude that Kelly's substantive due process claim is not ripe. Further, as we held in Shelton, a claimed due process error cannot constitute manifest constitutional error subject to review under RAP 2.5(a) (3) until the State seeks to enforce collection or imposes a sanction for failure to pay.[2]

Even if Kelly's argument were ripe for review and he could raise it for the first time on appeal, it would fail under State v. Seward.[3] Kelly acknowledges that the State has a legitimate interest in imposing the VPA and the DNA fee,[4] but he contends that imposing LFOs on a defendant who lacks the ability to pay does not rationally serve this interest. On the contrary, Seward held that the VPA and the DNA fee are rationally related to the State's interest:

---

State v. Lewis, 194 Wn. App. 709, 715, 379 P.3d 129, review denied, 186 Wn.2d 1025 (2016).

[2] Shelton, 194 Wn. App. at 675.

[3] 196 Wn. App. 579, 384 P.3d 620 (2016), review denied, 188 Wn.2d 1015 (2017).

[4] Seward, 196 Wn. App. at 584-85 ("[T]he DNA collection fee serves the legitimate state interest of funding the collection, analysis, and retention of convicted offenders' DNA profiles to facilitate future criminal identifications . . . [T]he VPA serves the legitimate state interest of funding comprehensive programs to encourage and facilitate testimony by victims and witnesses of crimes.").

> First, imposing [the VPA and the DNA fees] on all felony offenders without first considering their ability to pay is rationally related to legitimate state interests because even though some offenders may be unable to pay, some will. So the imposition of [the VPA and the DNA fees] on all offenders creates funding sources for these purposes.
>
> Second, imposing [the VPA and the DNA fees] on offenders who may be indigent at the time of sentencing is also rationally related to funding these purposes because the defendant's indigency may not always exist. We can conceive of situations in which an offender who is indigent at the time of sentencing will be able to pay the fees and assessments in the future. So it is not unreasonable to believe that imposing these fees and assessments on all indigent offenders would result in some funding for these purposes.[5]

We agree with the majority in Seward that the VPA and the DNA fee statutes are rationally related to legitimate state interests as applied to all offenders. Kelly's constitutional challenge fails.

## The DNA Testing Fee

For the first time on appeal, Kelly asserts that because he suffers from a mental health condition, the trial court exceeded its authority by imposing the DNA fee without first determining whether he had the ability to pay as required by RCW 9.94A.777(1). The State contends that Kelly waived this issue when he did not object to the imposition of LFOs by the trial court. "Unpreserved LFO errors do not command review as a matter of right."[6] But, under RAP 2.5(a), we exercise our discretion to consider the issue.[7]

---

[5] Seward, 196 Wn. App. at 585.
[6] State v. Blazina, 182 Wn.2d 827, 833, 344 P.3d 680 (2015).
[7] See Blazina, 182 Wn.2d at 834-35.

The trial court imposed only mandatory LFOs, the $500 VPA and the $100 DNA fee.[8] The court waived all discretionary fees and costs based on its finding that Kelly was indigent. In general, a court must impose mandatory LFOs regardless of the defendant's ability to pay.[9] However, "RCW 9.94A.777(1) requires that a trial court determine whether a defendant who suffers from a mental health condition has the ability to pay any LFOs, mandatory or discretionary."[10]

> (1) Before imposing any legal financial obligations upon a defendant who suffers from a mental health condition, other than restitution or the victim penalty assessment under RCW 7.68.035, a judge must first determine that the defendant, under the terms of this section, has the means to pay such additional sums.
>
> (2) For the purposes of this section, a defendant suffers from a mental health condition when the defendant has been diagnosed with a mental disorder that prevents the defendant from participating in gainful employment, as evidenced by a determination of mental disability as the basis for the defendant's enrollment in a public assistance program, a record of involuntary hospitalization, or by competent expert evaluation.[11]

Although the State concedes that Kelly suffers from "some mental health issues," it asserts that Kelly does not have a mental health condition because his competency evaluator questioned whether he was "malingering."[12] Kelly's competency evaluation, however, shows Kelly suffers from mental health issues

---

[8] RCW 7.68.035(1)(a) (VPA); RCW 43.43.7541 (DNA fee); State v. Lundy, 176 Wn. App. 96, 102-03, 308 P.3d 755 (2013).

[9] Lundy, 176 Wn. App. at 102-03.

[10] State v. Tedder, 194 Wn. App. 753, 756, 378 P.3d 246 (2016).

[11] RCW 9.94A.777.

[12] Included in the competency evaluation is a note from a psychiatrist who treated Kelly previously; the note states that Kelly has "been known for malingering." Kelly's evaluator also observed that Kelly's memory difficulties were "possibly exaggerated" by Kelly.

including past head injuries, multiple psychological diagnoses, and substance abuse issues.[13] And the record contains no evidence that Kelly has worked since 2005 when a vehicle accident left him physically disabled. The trial court observed that Kelly's "mental health circumstances" contributed to his commission of the offense; however, the court did not consider whether Kelly had a mental health condition as defined by RCW 9.94A.777(2) or whether Kelly had the ability to pay the DNA fee as required by RCW 9.94A.777(1). We remand for consideration of whether Kelly has a mental health condition and, if so, whether he has the ability to pay the DNA fee.

## CONCLUSION

We affirm in part and remand for consideration of whether Kelly has a mental health condition that would require the court to determine whether he can pay the DNA fee.

_Leach, J._

WE CONCUR:

_Dwyer, J._        _Appelwick, J._

---

[13] The evaluator offered the following diagnostic impression: amphetamine use disorder, cannabis use disorder, history of alcohol use disorder, unspecified depressive disorder, unspecified personality disorder with antisocial and borderline traits, and posttraumatic brain injury.