

IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
DIVISION THREE

| | | |
|---|---|---|
| STATE OF WASHINGTON, | ) | |
| | ) | No.  34172-1-III |
| Respondent, | ) | |
| | ) | |
| v. | ) | |
| | ) | UNPUBLISHED OPINION |
| COREY JAVON WILLIAMS, | ) | |
| | ) | |
| Appellant. | ) | |

SIDDOWAY, J. — Corey Javon Williams—aka Corey Javon Pugh, Sr., who asked

to be addressed as Corey Pugh, Sr. in the trial below[1]—appeals his conviction for theft of

a motor vehicle.  He contends the evidence was insufficient to support the jury's finding

---

[1] We will refer to the appellant as Corey Javon Williams, notwithstanding that the trial court honored his request to be referred to during trial as Corey Pugh.

The State offered evidence at trial that the appellant uses both names.  He was charged and convicted as Corey Javon Williams, which is how he is identified on the FBI's Interstate Identification Index and on the Washington Judicial Information System's defendant case history.

of guilt, the prosecutor committed misconduct during closing argument, and that legal

financial obligations (LFOs), some unconstitutional, were imposed without an adequate

inquiry. A fourth assignment of error to the trial court's decision to allow Mr. Williams

to represent himself was rejected in our decision in *State v. Williams*, No. 34171-2-III

(Wash. Ct. App. Apr. 3, 2018) (unpublished), http://www.courts.wa.gov/opinions

/pdf/341712_unp.pdf (*Williams* I). We accept the State's concession to strike three

discretionary LFOs, remand with that direction, and otherwise affirm.

FACTS AND PROCEDURAL BACKGROUND

In September 2015, Corey Javon Williams rented a Ford Mustang from Budget

Rental Car in Richland under the name "Corey J. Pugh." He did not return the car a week

later, when the terms of his rental agreement provided for its return. The rental

agreement provided for an extension of the rental prior to the return date by calling a toll-

free number, but Mr. Williams did not request an extension. When Budget Rental's loss

prevention department attempted to run the credit card used for the rental to cover

additional charges accrued following the return date, the charge was declined. Budget

Rental reported the Mustang stolen approximately five weeks after the missed return

date.

The owner of the agency doing business as Budget Rental Car in Richland has a

sister, Shelly Horton, who works for Budget Car Sales in the same building. Many years

before he rented the Mustang, Mr. Williams and Ms. Horton had been coworkers at

Budget Car Sales.  At about the same time that Budget Rental was moving forward with filing a report that the Mustang had been stolen, Ms. Horton received a telephone message about the car from Corey Pugh, who she later determined to be Mr. Williams. When Ms. Horton spoke to Mr. Williams, he told her that the bank that "was the legal owner on the title" to the Mustang owed him "a large sum of money," and he was going to file a legal proceeding to take ownership of the Mustang.  Report of Proceedings (RP) (Trial) at 150, 156.  He asked for a fax number and faxed Ms. Horton the copy of a UCC-1 financing statement.  The financing statement had been filed by The C Williams Group, Mr. Williams's limited liability company (LLC), shortly after he rented the car.  It represented that The Bank of New York Mellon Trust Company and PV Holding Corp. were indebted to The C Williams Group, that a "lien" was attached for "1,000,000,000.00 dollars," and that the billion dollar liability was secured by the Mustang.  Ex. 3, at 1.

Budget Rental's practice was to keep the vehicle registration for its rental cars in the car's unlocked glove box.  The registration for the Mustang rented by Mr. Williams would have provided him with information that title was held by PV Holding Corp. and that The Bank of New York Mellon and Trust Company was a lienholder.

The State charged Mr. Williams with theft of a motor vehicle on November 16, 2015.  The Olympia Police Department recovered the Mustang on December 26, 2015.

On December 28, 2015, Mr. Williams appeared for arraignment in two matters: this matter and charges of two residential burglaries in Benton County case no. 15-1-

01178-6.  He told the court he wished to proceed pro se.  A *Faretta*[2] inquiry followed that is reproduced in our opinion in *Williams* I.  *Williams* I, slip op. at 3-5.  At a combined hearing on motions in both matters that took place in late January 2016, the court cautioned Mr. Williams about self-representation further, in statements that are also reproduced in our earlier opinion.  *See id.* at 5.

The court allowed Mr. Williams to represent himself, which he did.  In this case, he filed a number of motions and defended himself at a two day jury trial that began on February 22, 2016.  During the trial, the State called as witnesses the owner of the Budget Rental agency, Ms. Horton, an investigating officer, and Detective Rick Runge.

Detective Runge testified to similar crimes for which Mr. Williams had been convicted in the past.  Like the motor vehicle theft, the crimes described by Detective Runge had involved Mr. Williams's assertions of ownership based on unsubstantiated representations that he had some type of lien or security interest in personal or real property.

Mr. Williams called two witnesses: he recalled the owner of the Budget Rental agency and called the deputy prosecutor who was trying the case for the State.

During closing arguments the prosecutor argued, in part:

> [PROSECUTOR]:  . . . [T]wo days before the car is due back, Mr. Williams or Mr. Pugh, or the C. Williams Group, all the same person is—

---

[2] *Faretta v. California*, 422 U.S. 806, 95 S. Ct. 2525, 45 L. Ed. 2d 562 (1975).

. . . .

[PROSECUTOR]:  —is making documentation, legal documentations that he's [owed] a billion dollars before their car is ever due back. . . .  Well if he owned it, if he's owed a billion dollars, why not tell them right away?  It's mine, I'm keeping it.

You guys, we didn't hear any testimony about how he came to be owed a billion dollars between September 29th and October 4th when this filing was made.

MR. WILLIAMS:  Objection, Your Honor.  They did a jury instruction stating that the defendant does not have to testify, now she's testifying for me.

THE COURT:  No.  I'm going to overrule the objection.  Go ahead, counsel.

[PROSECUTOR]:  . . . So we know sometime between September 29th and October 4th, P.V. Holding Corp., or Budget Car Sales, came to owe him a billion dollars, if you believe the lien filing.

You could also find, though, as a jury, that this lien filing is not worth the paper it's written on.  You can find, based on the weight of the testimony from all of the witnesses who testified, based on his history, that this is just a way to obtain a car by theft; that this lien document is a way to take a rental car that belongs to someone else . . . and keep it.  Because this is what he does.

RP (Trial) at 324-26.

The jury found Mr. Williams guilty.  At sentencing, the trial court asked a couple of questions about his past work and future ability to work, found that he had the ability or likely future ability to pay LFOs, and imposed a total of $651.34.[3]  Mr. Williams did not object.  He now appeals.

---

[3] The court imposed a $200.00 criminal filing fee, a $60.00 sheriff's service fee, a $250.00 jury demand fee, a $100.00 DNA (deoxyribonucleic acid) collection fee, and $41.34 in witness fees.

ANALYSIS

In *Williams* I, we held that the trial court in this action and in Benton County case no. 15-1-01178-6 did not abuse its discretion in allowing Mr. Williams to represent himself. *Williams* I, slip. op. at 12-15. Our decision in that case disposes of that assignment of error here.

The additional issues raised in this appeal are the sufficiency of the evidence, alleged prosecutorial misconduct, and challenges to the court-ordered LFOs. We address the issues in the order stated.

*The evidence was sufficient*

Mr. Williams points out that while the State introduced evidence of a security interest and a lien through which he told Ms. Horton he intended to take ownership of the Mustang, it never produced evidence that his interest was invalid. Without proof that his interest was invalid, he claims that the State's evidence of theft of a motor vehicle was insufficient.

The test for determining the sufficiency of the evidence is whether, after viewing the evidence in the light most favorable to the State, any rational trier of fact could have found guilt beyond a reasonable doubt. *State v. Witherspoon*, 180 Wn.2d 875, 883, 329 P.3d 888 (2014). A criminal defendant's claim of insufficient evidence admits the truth of the State's evidence and all inferences that reasonably can be drawn from it. *State v. Condon*, 182 Wn.2d 307, 314, 343 P.3d 357 (2015).

"A person is guilty of theft of a motor vehicle if he or she commits theft of a motor vehicle." RCW 9A.56.065. "Theft," according to RCW 9A.56.020(1), means:

> (a) To wrongfully obtain or exert unauthorized control over the property or services of another or the value thereof, with intent to deprive him or her of such property or services; or
> (b) By color or aid of deception to obtain control over the property or services of another or the value thereof, with intent to deprive him of such property or services.

"Subsection (a) is known as theft by taking while subsection (b) is known as theft by deception." *State v. Smith*, 115 Wn.2d 434, 438, 798 P.2d 1146 (1990). In the trial below, the jury was instructed on both alternatives and was told it need not be unanimous as to means, so sufficient evidence must support both alternatives. *See State v. Owens*, 180 Wn.2d 90, 95, 323 P.3d 1030 (2014).

The State presented evidence that title to the Mustang was held by PV Holding Corp. It presented evidence that Mr. Williams had rights under a rental agreement that were limited to a week-long term and any extension authorized in accordance with the agreement's terms. It presented evidence that Mr. Williams never returned the Mustang nor took the steps required to extend the rental. It proved that his failure to return the car was knowing, as evidenced by his filing the UCC-1 financing statement and notifying Ms. Horton that he intended to take ownership. This is evidence from which theft by taking and theft by deception could both be found.

As for the State having offered the UCC-1 financing statement into evidence, a UCC-1 form exists to provide notice. It is not signed by the debtor and is not itself proof of any legal interest. *See* RCW 62A.9A.521(a); Ex. 3. The C Williams Group was not entitled to file the financing statement unless it was authorized to do so by the purported debtors. *See* RCW 62A.9A-509(a). It was subject to statutory damages if it filed the statement without the debtors' authorization. *See* RCW 62A.9A-625(e). The financing statement was evidence at most that The C Williams Group purported, unilaterally, to have a legal interest.

If jurors had mistakenly believed that the UCC-1 financing statement proved that Mr. Williams had an interest and acquitted him, their mistake would be unreviewable. But the jury did not acquit. We can assess the UCC-1 financing statement for what it is: legally meaningless. The evidence of theft was sufficient.

*Prosecutorial misconduct*

Mr. Williams contends that the prosecutor's statement during closing argument about having heard no testimony about how Mr. Williams came to be owed a billion dollars constituted prosecutorial misconduct. He characterizes it as an impermissible comment on his constitutional right to remain silent and as shifting the burden of proof to the defense.

Criminal defendants have no duty to present evidence, and a prosecutor commits error if he or she suggests otherwise. *State v. Cheatam*, 150 Wn.2d 626, 652, 81 P.3d 830

8

(2003). A prosecutor's argument that shifts the State's burden of proof to the defendant constitutes misconduct. *State v. Thorgerson*, 172 Wn.2d 438, 453, 258 P.3d 43 (2011). However, "[t]he mere mention that [the] defense evidence is lacking does not constitute prosecutorial misconduct or shift the burden of proof to the defense." *State v. Jackson*, 150 Wn. App. 877, 885-86, 209 P.3d 553 (2009). A defendant claiming prosecutorial misconduct bears the burden of proving "'that the prosecutor's conduct was both improper and prejudicial in the context of the entire record and the circumstances at trial.'" *State v. Magers*, 164 Wn.2d 174, 191, 189 P.3d 126 (2008) (quoting *State v. Hughes*, 118 Wn. App. 713, 727, 77 P.3d 681 (2003)).

Mr. Williams ultimately argued two theories in his closing argument. One was that Corey Pugh, not Corey Williams, rented the Mustang. The other was that late return of a rental car without paying for the extension because of a declined credit card may be a breach of the rental agreement, but it is not a crime. To prove that Mr. Williams did not innocently hold onto the car intending to pay additional charges, the State offered the evidence that shortly after renting it, he filed the UCC-1 form and later told Ms. Horton he was taking ownership.

Having made the point that Mr. Williams was claiming dominion over the Mustang, not merely extending his rental, the prosecutor also reasonably argued that jurors could and should find that Mr. Williams had no *right* to claim dominion. The prosecutor never said it was Mr. Williams's burden to prove he had acquired title to the

car. The prosecutor merely argued that based on the evidence presented, the jurors could find that the UCC-1 form was "not worth the paper it's written on." RP (Trial) at 326. That was a fair inference from the evidence. The record included testimony and documentary evidence that the registered owner of the car was PV Holding Corp., countered only by a dubious representation by The C Williams Group that it had accepted the car as security for a billion dollar loan. The prosecutor's argument was neither improper nor prejudicial.

*Legal financial obligations*

Mr. Williams argues that the trial court's inquiry into Mr. Williams's present and future ability to pay before imposing discretionary LFOs was inadequate under RCW 10.01.160(3) and *State v. Blazina*, 182 Wn.2d 827, 344 P.3d 680 (2015). He challenges the court's treatment of the $200 criminal filing fee as if it were mandatory rather than discretionary and, assuming it is mandatory, as imposing it in violation of his right to equal protection. Finally, he argues that the victim's penalty assessment, imposed under RCW 7.68.035, and the DNA collection fee, imposed under RCW 43.43.7541, violate substantive due process when applied to defendants who do not have the ability to pay them.

The State concedes Mr. Williams's challenge to discretionary LFOs and agrees to a remand with directions to strike the sheriff's service fee, the jury demand fee, and the witness fees from the cost bill. It defends the remaining LFOs as mandatory and

10

constitutional.  We accept the State's concession and will remand with directions to strike the three discretionary LFOs.

Turning to Mr. Williams's remaining challenges, as we held in *Williams* I, the criminal filing fee is mandatory.  *Williams* I, slip op. at 20-21 (citing *State v. Lundy*, 176 Wn. App. 96, 102, 308 P.3d 755 (2013); *State v. Stoddard*, 192 Wn. App. 222, 225, 366 P.3d 474 (2016); *State v. Gonzales*, 198 Wn. App. 151, 153, 392 P.3d 1158, *review denied*, 188 Wn.2d 1022, 398 P.3d 1140 (2017)).

His equal protection challenge to that fee, which he argues arises from the fact that the filing fee for indigent *civil* litigants may be waived under GR 34, has been rejected by this court.  *State v. Mathers*, 193 Wn. App. 913, 925-26, 376 P.3d 1163, *review denied*, 186 Wn.2d 1015, 376 P.3d 1163 (2016).

Finally, this court has rejected his substantive due process challenge to imposing the victim's penalty assessment and the DNA collection fee on defendants who do not have the ability to pay.  *State v. Seward*, 196 Wn. App. 579, 585, 384 P.3d 620 (2016), *review denied*, 188 Wn.2d 1015, 396 P.3d 349 (2017).

In a motion filed along with his opening brief, Mr. Williams asks this court to

11

waive costs on appeal.[4]  Under RAP 14.2, "[a] commissioner or clerk of the appellate court will award costs to the party that substantially prevails on review, unless the appellate court directs otherwise in its decision terminating review."  In order for the panel to exercise informed discretion, a general order of this division requires an appellant to request waiver of costs on appeal in his or her opening brief or by a motion filed and served within 60 days following the filing of the opening brief.[5]  If the appellant is alleging inability to pay, he or she is required by the general order to provide the trial court's indigency report and a report as to continued indigency and likely future inability to pay.

In a report as to continued indigency attached to his motion, Mr. Williams lists outstanding debts in an amount that is ambiguous, given one amount that may be substantial but more likely is missing a decimal point.  While he reports that he owns no property, has no source of income, and can pay nothing toward any costs awarded to the State, he is presently 40 years old and has completed two years of college.  He was sentenced to 57 months' confinement.

---

[4] Mr. Williams raises other matters in his motion, but the judges generally determine only those motions identified in RAP 17.2(a).  By general order, we also permit criminal appellants to seek a waiver of fees on appeal by motion.  That is the only matter raised by Mr. Williams's motion that we will consider.  His remaining arguments can be raised in an objection to any cost bill filed by the State.

[5] See General Order of Division III, *In re the Matter of Court Administration Order re: Request to Deny Cost Award* (Wash. Ct. App. June 10, 2016), https://www.courts. wa .gov/appellate_trial_courts/?fa=atc.genorders&div=III.

No. 34172-1-III
*State v. Williams*

Having considered his report the panel denies his motion, but without prejudice to his right to demonstrate to our commissioner his current or likely future inability to pay. See RAP 14.2.

We remand with directions to strike the sheriff's service fee, the jury demand fee, and the witness fees from the cost bill. We otherwise affirm.

A majority of the panel has determined this opinion will not be printed in the Washington Appellate Reports, but it will be filed for public record pursuant to RCW 2.06.040.

_____
Siddoway, J.

WE CONCUR:

_____
Korsmo, J.

_____
Pennell, A.C.J.

13