# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

## DIVISION II

| | |
|---|---|
| STATE OF WASHINGTON, | No. 47523-5-II |
| Respondent, | |
| v. | |
| ANDREW PATRICK MATHERS, | PUBLISHED OPINION |
| Appellant. | |

MELNICK, J. — To an indigent defendant saddled with legal financial obligations (LFOs), it does not matter if the LFOs are labeled mandatory or discretionary. The effects on the indigent defendant remain the same. However, until there are legislative amendments or Supreme Court changes in precedent, we must recognize these distinctions and adhere to the principles of *stare decisis*.

Andrew Mathers appeals from the trial court's imposition of mandatory LFOs. He argues that the trial court's failure to inquire into his particular ability to pay a $100 deoxyribonucleic acid (DNA) fee and a $500 Victim Penalty Assessment (VPA) fee constituted error, violated equal protection, and violated due process. We affirm the trial court.[1]

---

[1] Because of our resolution above, we also conclude the trial court did not err by failing to conduct an individualized inquiry into Mathers's ability to pay DNA and VPA fees.

FACTS

After the State amended Mathers's original charge to theft in the second degree, Mathers entered a plea of guilty. At sentencing Mathers cited to *Blazina*[2] and objected to the imposition of LFOs. The trial court imposed $64.99 in restitution. The court also imposed a $100 DNA fee and a $500 VPA fee. The court waived all other LFOs. Mathers appeals.

ANALYSIS

I.     APPLICABLE LAW

"The sentencing court's authority to impose court costs and fees is statutory." *State v. Cawyer*, 182 Wn. App. 610, 619, 330 P.3d 219 (2014); RCW 10.01.160(3). DNA[3] and VPA[4] fees are authorized by the legislature. A trial court may impose attorney fees and other costs on a convicted defendant if he or she is able to pay, or will be able to pay. RCW 10.01.160(3); *State v. Eisenman*, 62 Wn. App. 640, 644, 810 P.2d 55, 817 P.2d 867 (1991).

The DNA collection fee statute states,

> Every sentence imposed for a crime specified in RCW 43.43.754 *must* include a fee of one hundred dollars. The fee is a court-ordered [LFO] as defined in RCW 9.94A.030 and other applicable law. For a sentence imposed under chapter 9.94A RCW, the fee is payable by the offender after payment of all other [LFOs] included in the sentence has been completed.

RCW 43.43.7541 (emphasis added).

The VPA statute states,

> When any person is found guilty in any superior court of having committed a crime . . . there *shall* be imposed by the court upon such convicted person a penalty assessment. The assessment shall be in addition to any other penalty or fine

---

[2] *State v. Blazina*, 182 Wn.2d 827, 344 P.3d 680 (2015).

[3] RCW 43.43.7541

[4] RCW 7.68.035.

imposed by law and shall be five hundred dollars for each case or cause of action that includes one or more convictions of a felony or gross misdemeanor and two hundred fifty dollars for any case or cause of action that includes convictions of only one or more misdemeanors.

RCW 7.68.035(1)(a) (emphasis added).

II.     THE MANDATORY NATURE OF DNA AND VPA FEES

Mathers argues the trial court mistakenly believed it was required to impose DNA and VPA fees without regard to Mathers's indigence. Mathers contends the DNA and the VPA statutes should be read together with RCW 10.01.160. He also argues that failure to consider his ability to pay violates the plain language of RCW 10.01.160(3) and the purpose of the Sentencing Reform Act of 1981.[5] We disagree.

A.     Legislative Intent

Where the legislature has had time to correct a court's interpretation of a statute and has not done so, we presume the legislature approves of our interpretation. *See In re Postsentence Review of Smith*, 139 Wn. App. 600, 605, 161 P.3d 483 (2007). Washington courts have consistently held that a trial court need not consider a defendant's past, present, or future ability to pay when it imposes either DNA or VPA fees. *See State v. Curry*, 118 Wn.2d 911, 917-18, 829 P.2d 166 (1992) (VPA fees are mandatory notwithstanding defendant's ability to pay); *State v. Clark*, 191 Wn. App. 369, 374, 362 P.3d 309 (2015) (victim assessment, filing fee, and DNA collection fee are mandatory obligations not subject to defendant's ability to pay); *see also State v. Lundy*, 176 Wn. App. 96, 102, 308 P.3d 755 (2013); *State v. Kuster*, 175 Wn. App. 420, 424, 306 P.3d 1022 (2013); *State v. Thompson*, 153 Wn. App. 325, 336, 223 P.3d 1165 (2009); *State v. Williams*, 65 Wn. App. 456, 460, 828 P.2d 1158, 840 P.2d 902 (1992).

---

[5] Ch. 9.94A RCW.

Washington courts consistently treat the DNA and the VPA statutes as separate and distinct from the discretionary LFO statute and the restitution statute. However, Mathers argues that when the legislature intends to revoke the court's discretion, it explicitly evinces its intent. For support, he cites the restitution statute which says, "The court may not reduce the total amount of restitution ordered because the offender may lack the ability to pay the total amount." RCW 9.94A.753(4). Mathers contends that the absence of such obligatory language in the DNA and the VPA statutes shows the legislature's intent to grant courts discretion.

While it is true that cannons of statutory interpretation direct that where the legislature uses different language within a provision, a different intent is indicated, *see State v. Conover*, 183 Wn.2d 706, 712-13, 355 P.3d 1093 (2015), Mathers's application of this principle to the present case is flawed. First, Mathers cites *Conover*, 183 Wn.2d at 712-13, for the principle that "the legislature's choice of different language in *different* provisions indicates different legislative intent." Br. of Appellant at 7-8 (emphasis added). However, in *Conover*, the court interpreted one statute by comparing differing language in sections of that *same* statute. 183 Wn.2d at 712-13. The appropriate use of this interpretive tool is to compare the language within the same provision, or between amended versions of the same statute, but not between entirely different statutes. *See In re Parentage of K.R.P.*, 160 Wn. App. 215, 223, 247 P.3d 491 (2011) ("'Where a provision contains both the words "shall" and "may," it is presumed that the lawmaker intended to distinguish between them.'" (Quoting *Scannell v. City of Seattle*, 97 Wn.2d 701, 704, 648 P.2d 435 (1982)); *see also State v. Roberts*, 117 Wn.2d 576, 585-86, 817 P.2d 855 (1991) (comparing the current and prior version of the same statute to define an ambiguous term).

Additionally, the legislature has given Washington courts no reasons to presume the restitution statute should be directly compared to discretionary court fees and costs statutes. In fact, "[t]he legislature's amendments to the restitution statute demonstrate that the legislature has consistently sought to ensure that victims of crimes are made whole after suffering losses caused by offenders and to increase offender accountability." *State v. Gonzalez*, 168 Wn.2d 256, 265, 226 P.3d 131 (2010). The restitution statute is intended to be both punitive and compensatory. *State v. Kinneman*, 155 Wn.2d 272, 279-80, 119 P.3d 350 (2005).

The legislative intent behind the restitution statute is separate and distinct from its intent regarding the DNA and the VPA statutes. The DNA fee "serves to fund the collection of samples and the maintenance and operation of DNA databases" and does not have a punitive purpose. *State v. Brewster*, 152 Wn. App. 856, 860, 218 P.3d 249 (2009). The VPA fee is also not punitive in nature. *See State v. Humphrey*, 139 Wn.2d 53, 62, 983 P.2d 1118 (1999) (an amendment to the VPA statute did not apply retroactively because it created a new liability, not a new penalty).

Mathers also acknowledges that the legislature did amend the DNA fee statute to remove consideration of "hardship." Br. of Appellant at 8 n.7. He argues, however, that the legislature did not include language explicitly removing discretion. "In 2002 the legislature enacted a statute requiring courts to impose a $100 DNA collection fee with every sentence imposed under chapter 9.94A RCW for certain specified crimes, 'unless the court finds that imposing the fee would result in undue hardship on the offender.'" *Thompson*, 153 Wn. App. at 336 (quoting former RCW 43.43.7541 (2002)). The legislature amended the language in 2008 to state only, "Every sentence . . . must include a fee of [$100]." *Thompson*, 153 Wn. App. at 336 (quoting former RCW

43.43.7541 (2008)[6]). Given the legislative history, there does not appear to be support for the importance Mathers places on the lack of express language removing discretion.

We disagree with Mathers's argument that the legislature clearly intended trial courts to have discretion when imposing DNA and VPA fees.

B.      Case Law Precedent

Next, Mathers argues the Washington Supreme Court in *State v. Blazina*, 182 Wn.2d 827, 344 P.3d 680 (2015), "repeatedly described its holding as applying to 'LFOs,' not just to a particular cost." Br. of Appellant at 8. Mathers asserts *Blazina* clearly implicates that the DNA and the VPA statutes should be read in conjunction with RCW 10.01.160. However, this interpretation is overbroad. Although *Blazina* involved the appeal of LFOs including DNA and VPA fees, the court only reviewed discretionary LFOs. 182 Wn.2d at 831. The court listed all the LFOs imposed in Blazina's case but then stated, "The trial court, however, did not examine Blazina's ability to pay the *discretionary* fees on the record." *Blazina*, 182 Wn.2d at 831 (emphasis added). It also stated, "A defendant who makes no objection to the imposition of *discretionary* LFOs at sentencing is not automatically entitled to review." *Blazina*, 182 Wn.2d at 832 (emphasis added). Throughout the opinion, the court made clear that it was reviewing only discretionary LFOs. *Blazina*, 182 Wn.2d at 834-35, 837-38.

Mathers also argues that the Washington Supreme Court has never held that DNA fees are exempt from an ability to pay inquiry. He acknowledges that we made that holding in *Lundy*, 176 Wn. App. at 102-03, but contends we lacked the benefit of *Blazina* and should not now follow our own precedent. Although our Supreme Court has not explicitly held that DNA fees are exempt from the ability to pay inquiry, it has implicitly made such a holding. *Blazina* recognized the

---

[6] Later amendments in 2011 and 2015 do not impact our analysis.

distinction between mandatory and discretionary fees. *Accord State v. Stoddard*, 192 Wn. App. 222, 225, 336 P.3d 474 (2016) ("*Blazina* addressed only discretionary [LFOs]."). The Washington Supreme Court could have interpreted the statute to require trial judges to conduct an ability to pay inquiry before imposing the DNA fee; however, it did not.

Mathers also acknowledges that the Washington Supreme Court stated in *Curry*, 118 Wn.2d at 917-18, that VPA fees are mandatory notwithstanding a defendant's ability to pay. But he contends the opinion was issued 20 years ago and solely addressed the argument that the VPA statute was unconstitutional. Specifically, Mathers contends that the portion of the opinion that addressed whether an inquiry was necessary for the VPA fee is "arguable dictum" and superseded by *Blazina*. Br. of Appellant at 12.

In *Curry*, our Supreme Court considered appellants' appeals of VPA fees. 118 Wn.2d at 917. In doing so, the court distinguished the VPA fee from costs imposed under RCW 10.01.160 stating, "The penalty is mandatory. . . . In contrast to RCW 10.01.160, no provision is made in the statute to waive the penalty for indigent defendants." *Curry*, 118 Wn.2d at 917 (citation omitted). The court reasoned that the time for a defendant to contest a VPA fee on the basis of ability to pay was when the State sought payment. *Curry*, 118 Wn.2d at 917-18. The court analyzed the statute's constitutionality and determined that the statute had sufficient safeguards to prevent an indigent defendant from being imprisoned purely because of indigency. *Curry*, 118 Wn.2d at 918. The court stated, "[N]o defendant will be incarcerated for his or her inability to pay the penalty assessment unless the violation is willful." *Curry*, 118 Wn.2d at 918. The court's remarks that the VPA fee was mandatory and did not contain a provision on ability to pay like in RCW 10.01.160 were a part of the court's analysis. *Curry*, 118 Wn.2d at 917. *Curry* has not been superseded by *Blazina*, and it is applicable to the situation currently before us.

Mathers also argues *State v. Blank*, 131 Wn.2d 230, 930 P.2d 1213 (1997) (appellate costs statute addressed), should be abandoned because more recent studies disprove its logic. In *Blank*, the court, relying on *Curry*, again considered "whether, *prior* to including a repayment obligation in defendant's judgment and sentence, it is constitutionally necessary that there be an inquiry into the defendant's ability to pay, his or her financial resources, and whether there is no likelihood that defendant's indigency will end." *Blank*, 131 Wn.2d at 239. The court held, "[T]he Constitution does not require an inquiry into ability to pay at the time of sentencing. Instead, the relevant time is the point of collection and when sanctions are sought for nonpayment." *Blank*, 131 Wn.2d at 242.

Mathers's argument that we should not follow *Blank*, however, is beyond the purview of Washington's Court of Appeals. While it is clear that both our Supreme Court and this court are aware of a need to reform the LFO system, *see Blazina*, 182 Wn.2d at 835 (stating, "National and local cries for reform of broken LFO systems demand that this court exercise its RAP 2.5(a) discretion and reach the merits of this case"), the Supreme Court has not yet overruled its opinions in *Curry* or *Blank*. A Washington Supreme Court decision is binding on all lower courts in the state. *1000 Virginia Ltd. P'ship v. Vertecs Corp.*, 158 Wn.2d 566, 578, 146 P.3d 423 (2006). Therefore, because neither *Curry* nor *Blank* have been overruled, we must follow the Supreme Court's directly controlling precedent.

Lastly, Mathers cites General Rule (GR) 34 as further support that a broader application of RCW 10.01.160 is required. The court rule, adopted in 2010, states,

> Any individual, on the basis of indigent status as defined herein, may seek a waiver of filing fees or surcharges the payment of which is a condition precedent to a litigant's ability to secure access to judicial relief from a judicial officer in the applicable trial court.

GR 34(a). The Supreme Court possesses rule-making authority. *State v. Templeton*, 148 Wn.2d 193, 212, 59 P.3d 632 (2002). The "[p]romulgation of state court rules creates procedural rights." *Templeton*, 148 Wn.2d at 212. Courts apply cannons of statutory interpretation when construing court rules. *State v. Robinson*, 153 Wn.2d 689, 692, 107 P.3d 90 (2005).

The court's intent in GR 34 is clear if not from the language of the rule then by the comment to the rule, in which the court wrote,

> The adoption of this rule is rooted in the constitutional premise that every level of court has the inherent authority to waive payment of filing fees and surcharges on a case by case basis. Each court is responsible for the proper and impartial administration of justice which includes ensuring that meaningful access to judicial review is available to the poor as well as to those who can afford to pay.

GR 34 cmt. The rule has a focused goal. It allows filing fees to be waived to provide indigent people with access to the courts. GR 34(a). It does not say that civil judgments against those who had fees waived cannot be enforced. *See* GR 34. So Mathers's comparison is misplaced. He attempts to equate the waiving of filing fees with the imposition of criminal costs. GR 34 does not illuminate our Supreme Court's intent to more broadly apply RCW 10.01.160. We decline to rely on GR 34 to deduce the Washington Supreme Court's or the legislature's intent behind the DNA and the VPA statutes, or RCW 10.01.160.

  C.  Constitutional Challenges

   1.  Equal Protection

Mathers further argues that GR 34 supports his position that to allow mandatory costs and fees to be waived for indigent civil litigants but not for criminal defendants violates equal protection.[7] We disagree.

The Fourteenth Amendment of the United States Constitution and article I, section 12 of the Washington State Constitution require that similarly situated persons receive similar treatment under the law. *Harmon v. McNutt*, 91 Wn.2d 126, 130, 587 P.2d 537 (1978). "'Equal protection does not require that all persons be dealt with identically, but it does require that a distinction made have some relevance to the purpose for which the classification is made.'" *In re Det. of Thorell*, 149 Wn.2d 724, 745, 72 P.3d 708 (2003) (quoting *Baxstrom v. Herold*, 383 U.S. 107, 111, 86 S. Ct. 760, 15 L. Ed. 2d 620 (1966)). Where the challenge does not involve a suspect class and the right at issue is not a fundamental right, we utilize the rational basis test. *State v. Scherner*, 153 Wn. App. 621, 648, 225 P.3d 248 (2009).

---

[7] Mathers also asserts that the court in *Blazina* "urged trial courts in criminal cases to reference [GR34] when determining ability to pay." Br. of Appellant at 10. In *Blazina*, the court advised trial courts to look to GR 34 for guidance when determining indigency for discretionary LFOs. 182 Wn.2d at 838-39. While what Mathers says is not incorrect, his attempt to use the information to support his argument is not supported. He appears to suggest that the inference from the language of *Blazina*, evinces the Supreme Court's intent that civil litigants and criminal defendants be compared and that GR 34 and RCW 10.01.160 be applied equivalently. There is no support for this contention in the opinion. *Blazina*, 182 Wn.2d at 838-39.

Rational basis review requires the existence of a legitimate governmental objective and a rational means of achieving it. *In re Det. of Turay*, 139 Wn.2d 379, 410, 986 P.2d 790 (1999). "To overcome the strong presumption of constitutionality, the classification must be purely arbitrary." *In re Det. of Ross*, 114 Wn. App. 113, 118, 56 P.3d 602 (2002). The burden falls on the party challenging the classification to show that the classification is arbitrary. *Ross*, 114 Wn. App. at 118.

Here, Mathers appears to be premising his argument on GR 34 being to civil litigants what RCW 10.01.160 is to criminal defendants. As a basic premise, this assertion is incorrect. Mathers cites to *Jafar v. Webb*, in which the Washington Supreme Court held, "GR 34 provides a uniform standard for determining whether an individual is indigent and further requires the court to waive all fees and costs for individuals who meet this standard." 177 Wn.2d 520, 523, 303 P.3d 1042 (2013). In *Jafar*, the court held the intent of GR 34 is to insure access to the courts for civil litigants through fee waivers. 177 Wn.2d at 527-29.

On the other hand, RCW 10.01.160 allows courts to recoup *some* of the expenses associated with the criminal prosecution of a criminal defendant. *See also Eisenman*, 62 Wn. App. at 644. GR 34 serves a different purpose still from DNA and VPA fees, which are imposed only after a conviction. The fees are meant to respectively fund the collection of biological samples and the maintenance and operation of DNA databases, and to increase funding for victim programs. *Brewster*, 152 Wn. App. at 860; RCW 7.68.035. Mathers fails to establish that civil litigants and criminal defendants are similarly situated individuals receiving disparate treatment.

Mathers also argues that treating DNA and VPA fees as mandatory violates equal protection under *Fuller v. Oregon*, 417 U.S. 40, 94 S. Ct. 2116, 40 L. Ed. 2d 642 (1974). There the United States Supreme Court upheld the Oregon statute on which RCW 10.01.160 was based.

11

*Curry*, 118 Wn.2d at 915; *Fuller*, 417 U.S. 40. In that case, the Court reviewed non-mandatory costs accumulated from prosecuting a specific defendant. *Fuller*, 417 U.S. at 45. Mathers improperly relies on this case to demonstrate that the Fourteenth Amendment is only satisfied if RCW 10.01.160(3) is read in tandem with specific cost and fee statutes. *Fuller* asserts no such precedent. The case does not address mandatory cost and fee statutes. Following our Supreme Court precedent, we conclude the imposition of DNA and VPA fees on Mathers did not violate equal protection.

2.      Substantive Due Process

Both the state and federal constitutions mandate that no person may be deprived of life, liberty, or property without due process of law. U.S. CONST. amends. V, XIV, § 1; WASH. CONST. art. I, § 3. "'The due process clause of the Fourteenth Amendment confers both procedural and substantive protections.'" *Nielsen v. Dep't of Licensing*, 177 Wn. App. 45, 52, 309 P.3d 1221 (2013) (quoting *Amunrud v. Bd. of Appeals*, 158 Wn.2d 208, 216, 143 P.3d 571 (2006)). "Substantive due process seems to have been gradually adopted as the shorthand for individual rights which are not clearly textual." Stephen Kanter, *The Griswold Diagrams: Toward A Unified Theory of Constitutional Rights*, 28 CARDOZO L. REV. 623, 669 n.170 (2006). "Substantive due process protects against arbitrary and capricious government action even when the decision to take action is pursuant to constitutionally adequate procedures." *Amunrud*, 158 Wn.2d at 218-19. "It requires that 'deprivations of life, liberty, or property be substantively reasonable' or 'supported by some legitimate justification.'" *Nielsen*, 177 Wn. App. at 53 (quoting Russell W. Galloway, Jr., *Basic Substantive Due Process Analysis*, 26 U.S.F. L. REV. 625, 625-26 (1992)).

12

The level of review applied in a substantive due process challenge depends on the nature of the interest involved. *State v. Beaver*, 184 Wn. App. 235, 243, 336 P.3d 654 (2014), *aff'd*, 184 Wn.2d 321, 358 P.3d 385 (2015). If no fundamental right is involved, the proper standard of review is rational basis. *In re Det. of Morgan*, 180 Wn.2d 312, 324, 330 P.3d 774 (2014).

Due process precludes the jailing of an offender for failure to pay a fine if the offender's failure to pay was due to his or her indigence. *State v. Nason*, 168 Wn.2d 936, 945, 233 P.3d 848 (2010). Under certain circumstances, however, the State may imprison an offender for failing to pay his or her LFOs, such as if the offender is capable of paying but willfully refuses to pay or if the offender does not make a genuine effort to seek employment or borrow money in order to pay. *Nason*, 168 Wn.2d at 945. Due process requires the court to inquire into the offender's ability to pay, but the burden is on the offender to show nonpayment is not willful. *Nason*, 168 Wn.2d at 945. Therefore, "'[t]t is at the point of enforced collection . . . , where an indigent may be faced with the alternatives of payment or imprisonment, that he "may assert a constitutional objection on the ground of his indigency."'" *Curry*, 118 Wn.2d at 917 (quoting *State v. Curry*, 62 Wn. App. 676, 681-82, 814 P.2d 1252 (1991) (quoting *United States v. Pagan*, 785 F.2d 378, 381-82 (2d Cir.), *cert. denied*, 479 U.S. 1017 (1986)), *aff'd*, 118 Wn.2d 911).

Mathers argues his "substantive due process" rights were violated, Br. of Appellant at 11, but because the same issues have already been addressed unfavorably to Mathers by Washington courts, we disagree with him. In *Curry*, our Supreme Court held that the VPA statute did not violate due process because "no defendant will be incarcerated for his or her inability to pay the penalty assessment unless the violation is willful." 118 Wn.2d at 918. *Lundy* followed this precedent in the context of the DNA statute. 176 Wn. App. at 102-03. In that case, we stated, "[O]ur courts have held that these mandatory obligations are constitutional so long as 'there are

sufficient safeguards in the current sentencing scheme to prevent *imprisonment* of indigent defendants.'" *Lundy*, 176 Wn. App. at 102-03 (emphasis in original) (quoting *Curry*, 118 Wn.2d at 918); *see also Kuster*, 175 Wn. App. at 424-25 (relying on *Curry*, 118 Wn.2d at 917, and *Blank*, 131 Wn.2d at 241, to conclude DNA and VPA fees do not require an inquiry at the time of sentencing).

Because *Blazina*, 182 Wn.2d 827, did not change Washington case law regarding mandatory LFOs, and because Mathers does not assert any new arguments, instead rearguing issues that have been clearly addressed, we follow *Curry* and *Lundy* and conclude that the imposition of DNA and VPA fees did not violate Mathers's due process right.

We affirm the trial court.

_____
Melnick, J.

We concur:

_____
Johanson, P.J.

_____
Sutton, J.