# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

## DIVISION II

| | |
|---|---|
| STATE OF WASHINGTON, ex rel., WASHINGTON STATE PUBLIC DISCLOSURE COMMISSION, | No. 49932-1-II |
| Respondent, | |
| v. | |
| FOOD DEMOCRACY ACTION! and FOOD DEMOCRACY ACTION! YES ON I-522 COMMITTEED TO LABEL GMOs IN WASHINGTON,, | PUBLISHED OPINION |
| Appellant. | |

MELNICK, J. — Food Democracy Action! (Food Democracy) appeals from a judgment imposing civil penalties against it for violations of state campaign finance disclosure laws.[1] Food Democracy solicited and received contributions to support Initiative 522 (I-522). In turn, it contributed the money in its own name to the Yes on I-522 political committee. After the general election and vote on I-522, and after the Public Disclosure Commission (PDC) began an investigation, Food Democracy registered as a political committee and filed reports disclosing the contributions it received from over seven thousand contributors.

_____

[1] Ch. 42.17A RCW.

Food Democracy argues that the trial court erred in concluding it concealed the source of its campaign contributions. It contends that only intentional conduct amounts to concealment. Food Democracy also argues, for the first time on appeal, that the trial court erred by imposing statutorily authorized civil penalties for the state campaign finance disclosure law violations.

We affirm.[2]

### FACTS

I-522 appeared on the state ballot in November 2013, in the general election. It concerned the labeling of genetically engineered foods.

In early July 2013, Food Democracy sent e-mails to its members soliciting contributions in support of the I-522 campaign. Food Democracy raised $295,661.58.

In the three months before the election, Food Democracy made five payments, for a total of $200,000, directly to the Yes on I-522 political committee. Food Democracy made those contributions in its own name. It did not disclose that the money it contributed to the I-522 campaign came from over seven thousand individuals, most of whom lived outside the state. The Yes on I-522 political committee filed a report with the PDC stating that the $200,000 in contributions came directly from Food Democracy.

Food Democracy had some familiarity with the state campaign finance disclosure reporting requirements. An e-mail Food Democracy sent to its members referenced the "public disclosure records filed in Washington State" by the No on 522 political committee. Clerk's Papers (CP) at 130. As of two weeks before the election, Food Democracy's website stated that:

---

[2] Contrary to the dissent's proposed resolution, Food Democracy never raised in its brief or at oral argument that it had not committed concealment of names. We decide cases based on the issues set forth by the parties. RAP 12.1.

Washington State law requires [that Food Democracy] collect and report the name, mailing address, and the contribution amount for each individual whose contributions exceed $25 and the employer and occupation for each individual whose contributions exceed $100 in an election cycle. [The] contribution will be used in connection with Washington State elections and is subject to the limits and prohibitions of the Washington State Public Disclosure Commission.

CP at 135-36. However, before the election, Food Democracy did not report the names of any individuals who contributed funds that Food Democracy then contributed in its own name.

Eight days before the election, the Attorney General's Office received a citizen action letter[3] alleging that Food Democracy violated state campaign finance disclosure laws. The Attorney General's Office forwarded the letter to the PDC. The PDC opened an investigation within eight days of the election.

After the PDC began investigating Food Democracy, and after the election, Food Democracy registered as a political committee[4] (C-1pc Form), identified its treasurer and depository accounts, and filed the required reports. Former RCW 42.17A.205(1), (2)(d) (2012).[5]

Food Democracy filed twelve contribution reports (C-3 Forms), covering the period between July 31 through October 31. The reports detailed the weekly contributions Food Democracy deposited into their depository account for the three months prior to the election. Former RCW 42.17A.235(3). Those reports were the first filings disclosing the individuals who

---

[3] A citizen's action letter is a letter notifying the Attorney General's Office that an individual or entity has "reason to believe" a violation of the state campaign finance disclosure laws has occurred. WAC 390-37-041; *see* Former RCW 42.17A.765(4) (2012).

[4] A "political committee" is an entity with the "the expectation of receiving contributions or making expenditures in support of, or opposition to, any candidate or any ballot proposition." Former RCW 42.17A.005(37).

[5] The legislature amended portions of chapter 42.17A RCW in 2018. LAWS OF 2018, ch. 304 § 7. We cite to the sections in effect at the time events occurred in this case.

3

had contributed to Food Democracy in relation to the I-522 campaign. Food Democracy filed all of the C-3 Forms seventeen days after the election. They were between 18 and 109 days late.

Food Democracy also filed five summary reports (C-4 Forms), summarizing its financial activities and itemizing its expenditures from July until after the election. Former RCW 42.17A.235(2). Food Democracy filed all of the C-4 Forms on January 15, 2014, well after the election.

The State filed a complaint in Thurston County Superior Court seeking statutorily authorized civil penalties, costs, and fees under former RCW 42.17A.750(1)(c)-(d), (f). The complaint alleged that Food Democracy violated state campaign finance disclosure laws because it failed to timely register as a political committee, it failed to timely identify a treasurer or a depository account for collected funds, it failed to timely file required reports, and it concealed the identity of the individuals from whom it received its $200,000 in contributions to the Yes on I-522 political committee. The complaint also alleged Food Democracy acted either intentionally or negligently.

Food Democracy filed an answer admitting that it failed to comply with the registration and reporting requirements; however, it denied that its actions amounted to concealment of the source of its contributions.

The State filed a motion for partial summary judgment. Food Democracy opposed the State's motion and argued that its actions did not amount to concealment under former RCW 42.17A.435.

The trial court granted partial summary judgment in favor of the State. The only contested issue remaining for trial involved the amount of penalties, costs, and fees.

Food Democracy did not appear for trial. The State called witnesses and the court admitted evidence in support of the State's requests for civil penalties, costs, and fees authorized under former RCW 42.17A.750 and .765.

The State abandoned any argument that Food Democracy intentionally concealed the source of its contributions and did not seek treble damages for intentional violations of the state campaign finance disclosure laws. Former RCW 42.17A.765(5).

The trial court entered judgment against Food Democracy. It imposed a total penalty on Food Democracy of $319,281.58, including a penalty of $295,661.58 equaling the amount Food Democracy raised; a penalty of $18,000 for the 18 late reports ($1,000 per report for 18 reports);[6] and a $5,620 penalty for the cumulative number of days the reports were late ($5 per day for 1,124 days).[7] In addition, the court awarded the State $2,131.32 in investigation costs, $90,590.20 in attorney fees, and $325 in trial costs.

Food Democracy appeals.

## ANALYSIS

### I.    CONCEALMENT

Food Democracy argues that the court erred in granting summary judgment and by concluding that it concealed the source of its campaign contributions because former RCW 42.17A.435 only prohibits intentional or knowing conduct. We disagree.

---

[6] The eighteen late "reports" include its registration C-1pc Form, twelve C-3 Form reports, and five C-4 Form reports.

[7] The court based the 1,124 total late days on the 120 days the C-1pc Form registration was late, the cumulative 541 days the C-3 Form reports were late, and the cumulative 491 days the C-4 Form reports were late.

We review orders granting summary judgment de novo. *Utter ex rel. State v. Bldg. Indus. Ass'n of Wash.*, 182 Wn.2d 398, 406, 341 P.3d 953 (2015). A court properly grants summary judgment if, viewing "all the evidence in the light most favorable to the nonmoving party, . . . 'there is no genuine issue as to any material fact and . . . the moving party is entitled to a judgment as a matter of law.'" *Utter*, 182 Wn.2d at 406 (second omission in original) (quoting Civil Rules (CR) 56(c)).

We review questions of statutory interpretation de novo. *Utter*, 182 Wn.2d at 406. In interpreting statutes, our goal "is to ascertain and carry out the legislature's intent." *Jametsky v. Olsen*, 179 Wn.2d 756, 762, 317 P.3d 1003 (2014). We begin our analysis with the statute's plain meaning. *Gunn v. Riely*, 185 Wn. App. 517, 524, 344 P.3d 1225 (2015). "All words must be read in the context of the statute in which they appear, not in isolation or subject to all possible meanings found in a dictionary." *State v. Lilyblad*, 163 Wn.2d 1, 9, 177 P.3d 686 (2008). A statute's "plain meaning is derived from the context of the entire act as well as any 'related statutes which disclose legislative intent about the provision in question.'" *Jametsky*, 179 Wn.2d at 762 (quoting *Dep't of Ecology v. Campbell & Gwinn, LLC*, 146 Wn.2d 1, 11, 43 P.3d 4 (2002)). Only if the statute is ambiguous do we look to interpretive aids, such as canons of construction and case law. *Gunn*, 185 Wn. App. at 524.

State campaign finance disclosure provisions are to be,

> liberally construed to promote complete disclosure of all information respecting the financing of political campaigns and lobbying, . . . and full access to public records so as to assure continuing public confidence of fairness of elections and governmental processes, and so as to assure that the public interest will be fully protected.

Former RCW 42.17A.001.

The statute prohibiting concealment of campaign contributions provides:

> No contribution shall be made and no expenditure shall be incurred, directly or indirectly, in a fictitious name, anonymously, or by one person through an agent, relative, or other person in such a manner as to conceal the identity of the source of the contribution or *in any other manner so as to effect concealment*.

Former RCW 42.17A.435 (emphasis added).

This language does not require intentional or knowing conduct. The plain meaning contains no exception for unintentional conduct that results in the concealment of the source of campaign contributions.

Food Democracy relies on a Black's Law Dictionary definition of concealment to argue that the concealment statute only applies to "'conduct that is intentional or known to be likely to keep another from learning facts.'" Op. Br. of Appellant at 19. We reject this contention.

Food Democracy attempts to read the word "conceal" in isolation from the rest of the statute and not in the context of chapter 42.17A RCW. In addition, the public disclosure statute at issue applies to conduct that conceals the identity of the source of the contribution. RCW 42.17A.435. The plain meaning is evident; it prohibits any conduct that conceals the source of campaign contributions. In arriving at this conclusion, we note that one of the primary policies of the disclosure laws is "[t]hat political campaign and lobbying contribution and expenditures be fully disclosed to the public and that secrecy is to be avoided." RCW 42.17A.001(1).

In addition, there is a separate statute that permits treble punitive damages for intentional violations of the campaign finance disclosure laws. Former RCW 42.17A.765(5). The increased penalty for intentional violations suggests that the legislature contemplated unintentional conduct underlying some violations of the campaign finance disclosure laws. *See Dailey v. N. Coast Life Ins. Co.*, 129 Wn.2d 572, 577, 919 P.2d 589 (1996) (punitive damages is a form of "exceptional relief").

7

Based on the preceding, we conclude that the plain meaning of former RCW 42.17A.435 is unambiguous. It does not require intentional or knowing concealment.

Food Democracy does not dispute the facts; it only disputes the applicability of the concealment statute to its conduct. Despite soliciting and receiving contributions to support I-522, Food Democracy contributed to the Yes on I-522 political committee in its own name. Food Democracy did not report the source of its contributions. No genuine issue of material fact exists that Food Democracy's failures to timely report campaign finance activities concealed the identity of the sources of its campaign contributions.

Because the statute does not require the concealment to be intentional or knowing, the trial court did not err in granting partial summary judgment. Food Democracy's conduct resulted in the concealment of the source of it campaign contributions.

II. CIVIL PENALTIES

Food Democracy argues that the penalties amount to a manifest error of constitutional magnitude because they are a "grossly excessive" fine imposed in violation of the Eighth Amendment to the United States Constitution. Br. of Appellant at 33. Food Democracy also argues the trial court abused its discretion by imposing civil penalties.[8] Because Food Democracy did not appear at the trial on the question of penalties, all of these issues are raised for the first time on appeal.

The State argues that Food Democracy waived any objection to the penalties by failing to appear at trial and raise the issue below. The State further argues that any alleged error is not "manifest" because Food Democracy's argument "has no legal or factual basis." Br. of Resp't at

---

[8] Food Democracy's brief alternates between the terms "abuse of discretion" and "arbitrary and capricious" when making its nonconstitutional argument on the penalties imposed. We construe the brief as actually arguing abuse of discretion.

37. We agree with the State. In addition, the record is insufficient for us to address Food Democracy's constitutional challenge.

A party generally waives the right to appeal an error absent an objection at the trial level. RAP 2.5(a); *State v. WWJ Corp.*, 138 Wn.2d 595, 601, 980 P.2d 1257 (1999). But a party may raise an alleged error for the first time on appeal if it constitutes a manifest error affecting a constitutional right. RAP 2.5(a)(3); *WWJ Corp.*, 138 Wn.2d at 601. An "error is manifest only if it results in a concrete detriment to the claimant's constitutional rights, *and* the claimed error rests upon a plausible argument that is supported by the record." *WWJ Corp.*, 138 Wn.2d at 603. "If the record from the trial court is insufficient to determine the merits of the constitutional claim, then the claimed error is not manifest and review is not warranted." *WWJ Corp.*, 138 Wn.2d at 602.

A. Eighth Amendment Prohibition on Excessive Fines[9]

An Excessive Fines Clause claim "involves a genuine constitutional issue." *WWJ Corp.*, 138 Wn.2d at 603. However, the record must be sufficient to evaluate the merits of such a claim under RAP 2.5(a)(3). *WWJ Corp.*, 138 Wn.2d at 603-04. A record is insufficient for review if it lacks argument and analysis at trial on the disputed issue. *WWJ Corp.*, 138 Wn.2d at 598, 604.

---

[9] Food Democracy also briefly states that the penalties imposed against it are excessive because they target constitutionally protect speech, and are not substantially related to an important government interest. We disagree. *Human Life of Washington Inc. v. Brumsickle*, 624 F.3d 990 (9th Cir. 2010), "upheld Washington's disclosure laws on the ground that they satisfy the First Amendment's exacting scrutiny test, which examines whether the law's requirements 'are substantially related to a sufficiently important governmental interest.'" *Utter*, 182 Wn.2d at 434 (quoting *Brumsickle*, 624 F.3d at 1005). "Washington's disclosure laws are constitutional *on their face* because they serve an important government interest and use a narrowly tailored means that does not force overburdensome or duplicative reporting." *Utter*, 182 Wn.2d at 434.

The Eighth Amendment provides: "Excessive bail shall not be required, nor excessive fines imposed, nor cruel and unusual punishments inflicted." U.S. CONST. amend VIII; *WWJ Corp.*, 138 Wn.2d at 603. The Excessive Fines Clause "limits the government's power to extract payments, whether in cash or in kind, 'as punishment for some offense.'" *United States v. Bajakajian*, 524 U.S. 321, 328, 118 S. Ct. 2028, 141 L. Ed. 2d 314 (1998) (quoting *Austin v. United States*, 509 U.S. 602, 609-10, 113 S. Ct. 2801, 125 L. Ed. 2d 488 (1993)). The Due Process Clause of the Fourteenth Amendment "makes the Eighth Amendment's prohibition against excessive fines . . . applicable to the States." *Cooper Indus., Inc. v. Leatherman Tool Grp., Inc.*, 532 U.S. 424, 433-34, 121 S. Ct. 1678, 149 L. Ed. 2d 674 (2001).

"The first step in an excessive fines claim is to demonstrate the state action is 'punishment.'" *State v. Clark*, 124 Wn.2d 90, 102, 875 P.2d 613 (1994), *overruled on other grounds by State v. Catlett*, 133 Wn.2d 355, 945 P.2d 700 (1997). "The notion of punishment, as we commonly understand it, cuts across the division between the civil and the criminal law." *Austin*, 509 U.S. at 610. "[C]ivil proceedings may advance punitive as well as remedial goals." *Austin*, 509 U.S. at 610. "'A civil sanction that cannot fairly be said *solely* to serve a remedial purpose, but rather can only be explained as also serving either retributive or deterrent purposes, is punishment.'" *Kokesh v. SEC*, 137 S. Ct. 1635, 1645, 198 L. Ed. 2d 86 (2017) (quoting *Austin*, 509 U.S. at 621); *State ex rel. Eikenberry v. Frodert*, 84 Wn. App. 20, 30, 924 P.2d 933 (1996).

Food Democracy did not analyze or show that the civil penalties imposed by the trial court would be punishments under the Excessive Fines Clause at trial. Because it did not appear at trial, it also failed to address in the trial court that the civil penalties constitute punishment. The record is insufficient to determine whether the Excessive Fines Clause applies. We therefore cannot and do not address the merits of the alleged Eighth Amendment violation.

10

B.      Abuse of Discretion

We also decline to consider whether the trial court abused its discretion when imposing penalties against Food Democracy. Food Democracy conceded at oral argument that it waived its arguments related to the penalties when it failed to appear for trial and offered no good reason on the record. We agree that any argument on this issue is not preserved.

III.    ATTORNEY FEES

Food Democracy requests attorney fees and costs at trial and on appeal in the event it prevails. Because it did not prevail, we award Food Democracy no fees or costs.

The State requests attorney fees and costs on appeal in the event that it prevails. The State also requests that we affirm the award of attorney fees and costs at trial.

"In Washington, a party may recover attorney fees only when they are authorized by a private agreement, statute, or recognized ground of equity." *State ex rel. Pub. Disclosure Comm'n v. Permanent Offense*, 136 Wn. App. 277, 294, 150 P.3d 568 (2006). Former RCW 42.17A.765(5) provides, in relevant part, that in any civil action brought by the State for violations of the state campaign finance disclosure laws:

> the court may award to the state all costs of investigation and trial, including reasonable attorneys' fees to be fixed by the court. . . . If the defendant prevails, he or she shall be awarded all costs of trial, and may be awarded reasonable attorneys' fees to be fixed by the court to be paid by the state of Washington.

In *Permanent Offense*, the court held that "an award of fees to a prevailing party at trial [under the identically worded former RCW 42.17.400(5)] authorizes fees on appeal . . . subject to . . . compliance with RAP 18.1(d)." 136 Wn. App. at 295.

We affirm the award of attorney fees and costs to the State at trial and award fees and costs on appeal to the State.

We affirm.

Melnick, J.

I concur:

Lee, A.C.J.

49932-1-II

BJORGEN, J. (dissenting) — I agree with the majority that Food Democracy Action! (Food Democracy) committed multiple violations of our campaign finance laws in its support of Initiative 522. However, I disagree that its actions constituted concealment under the governing statute.

Food Democracy did not file its political committee registration, its C-3 contribution reports, or its C-4 financial summary reports within the time prescribed by chapter 42.17A RCW. These delinquent reports were months late and were filed after the election occurred, thus depriving citizens of potentially enlightening information in deciding on their vote. In doing so, Food Democracy violated the law, including former RCW 42.17A.235 (2012) and former RCW 42.17A.240 (2012).

Food Democracy's actions, however, did not constitute concealment under RCW 42.17A.435, which states:

> No contribution shall be made and no expenditure shall be incurred, directly or indirectly, in a fictitious name, anonymously, or by one person through an agent, relative, or other person in such a manner as to conceal the identity of the source of the contribution or in any other manner so as to effect concealment.

By its terms, this provision bars contributions and expenditures that are made or incurred in a specific manner: a manner that conceals the identity of their source or effects concealment in other ways. "Manner" is defined in relevant aspect as "the mode or method in which something is done or happens." WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY 1376 (2002). The term is not otherwise defined in chapter 42.17A RCW. No argument is raised that statutory context compels some other meaning of "manner." Thus, the plain meaning of "manner" in this statute refers to the way in which the contribution or expenditure itself is carried out.

The specific examples in the statute confirm legislative intent to use the term in this way. Contributions made or expenditures incurred in fictitious names, anonymously or through

13

conduits each depend on the nature of the transaction itself, not on the failure to file a report after

they have occurred. Under the canon of statutory construction known as ejusdem generis,

> general terms appearing in a statute in connection with specific terms are to be
> given meaning and effect only to the extent that the general terms suggest similar
> items to those designated by the specific terms.

*Silverstreak, Inc. v. Dep't of Labor & Indus.*, 159 Wn.2d 868, 882, 154 P.3d 891 (2007).

Following that canon, the general term "in any other manner so as to effect concealment" must

be read to mean the same sort of thing as do the specific examples; that is, the general term must

pertain to the nature or circumstances of the contribution or expenditure itself.

Thus, both the plain language of the statute and the applicable canon of construction

point to the same end. RCW 42.17A.435 is aimed at concealment through the circumstances of

the transaction, including but not limited to evidence of intent to conceal through the transaction.

It is not aimed at the failure to file subsequent reports disclosing the transaction. Those

transgressions are covered by other elements of chapter 42.17A RCW.

Our recent decision in *State v. Grocery Manufacturers Association*, No. 49768-9-II, slip

op. at *1 (Wash. Ct. App. Sept. 5, 2018) http://www.courts.wa.gov/opinions/pdf, is not to the

contrary. In that decision, we affirmed the summary judgment by the trial court that upheld

penalties imposed on the Association for various violations of chapter 42.17A RCW, including

the failure to file required political committee reports. Among the provisions the trial court held

violated was RCW 42.17A.435's prohibition of concealment.

The Association challenged this only on the ground that RCW 42.17A.435 was

unconstitutionally vague. *Grocery Mfr.*, slip op. at *13. Specifically, the Association asserted that

"concealment" under RCW 42.17A.435 requires an independent act or omission besides the failure

to comply with other FCPA (Fair Campaign Practices Act) regulations and that apart from its

14

failing to register as a political committee, there was no evidence of that. *Grocery Mfr.*, slip op. at \*15. We held that the statute was not vague, because even under the Association's independent act standard, there was undisputed evidence at summary judgment that it deliberately concealed the identity of its members who contributed funds. *Grocery Mfr.*, slip op. at \*16.

Thus, our decision in *Grocery Manufacturers Association* did not decide the issue raised by this dissent: whether concealment under RCW 42.17A.435 requires some act apart from failure to comply with other provisions of chapter 42.17A RCW. The resolution of that issue is not affected by *Grocery Manufacturers Association.*

For these reasons, the superior court erred in concluding that Food Democracy concealed the true sources of the contributions made and expenditures received in violation of RCW 42.17A.435. That ruling should be reversed.

The court imposed a civil penalty of $295,661.58 for "concealing both the amount accumulated in and source of contributions received." Clerk's Papers at 245. Because the conclusion of concealment under RCW 42.17A.435 was in error, this civil penalty should be reversed. The figure of $295,661.58 imposed by the court was the amount of money Food Democracy raised in cash and in-kind contributions. Under former RCW 42.17A.750(1)(e) (2012), "[a] person who fails to report a contribution or expenditure as required by this chapter may be subject to a civil penalty equivalent to the amount not reported as required." This matter should be remanded to superior court for a new decision as to what amount of civil penalties should be imposed absent concealment under RCW 42.17A.435.

Bjorgen, J.

15