IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

| | | |
|---|---|---|
| STATE OF WASHINGTON, | ) | No. 82476-7-I |
| | ) | |
| Respondent, | ) | DIVISION ONE |
| | ) | |
| v. | ) | UNPUBLISHED OPINION |
| | ) | |
| JACOB TIMOTHY CLEMENT, | ) | |
| | ) | |
| Appellant. | ) | |
| | ) | |

HAZELRIGG, J. — Jacob T. Clement challenges the imposition of the mandatory DNA[1] collection fee and Crime Victim Assessment (CVA) at sentencing without an inquiry into his individual ability to pay. Clement argues imposition of these mandatory fees violates our state constitution's excessive fines clause, however he fails to engage with binding precedent which holds that both the DNA collection fee and CVA are non-punitive, such that the excessive fines clause does not apply. In light of that established authority, we affirm.

FACTS

Jacob Clement was charged with robbery in the first degree arising out of an incident wherein he held a knife to a man's throat to obtain 20 dollars. After spending approximately a year in jail as the case was pending, Clement entered a guilty plea to an amended charge of robbery in the second degree. The agreed

---

[1] Deoxyribonucleic acid.

Citations and pinpoint citations are based on the Westlaw online version of the cited material.

recommendation of the parties, pursuant to the plea agreement, was a sentence of six months of incarceration, payment of restitution in an amount to be determined[2], a condition of no contact with the victim and the mandatory $500 crime victim assessment and $100 DNA collection fees. The court imposed a jail term of six months' confinement (with credit for time served) and the other conditions proposed under the joint recommendation. Only the two mandatory fees were imposed.

Clement timely appealed.

ANALYSIS

I.       Mandatory Legal Financial Obligations (LFOs)

Clement argues that the imposition of both the $500 Crime Victim Assessment (CVA) and $100 DNA collection fee as mandatory fees violates article I, section 14 of our state constitution, specifically that the court erred in imposing them at sentencing without consideration of Clement's individual ability to pay.[3]

Both the DNA collection fee and CVA are mandatory and do not require the sentencing court to consider an individual's ability to pay. State v. Seward, 196 Wn. App. 579, 587, 384 P.3d 620 (2016); State v. Mathers, 193 Wn. App. 913, 917

---

[2] The deputy prosecutor later confirmed at sentencing that the State was not seeking restitution.

[3] The State argues that this is invited error given that the issue arises from a plea agreement. However, the plea agreement signed by Clement only referenced fees in the boilerplate language and noted that they were mandatory. They were expressly listed on the statement of defendant on plea of guilty, but following the preprinted language stating "The prosecuting attorney will make the following recommendation to the judge." While the State is correct that we will strictly enforce the doctrine of invited error, case law is clear that there must be some affirmative act by the appellant for the doctrine to apply. Here, the failure to object to fees properly described in the plea agreement and judgment and sentence as mandatory, does not trigger rejection of Clement's challenge as invited error. See State v. Weaver, 198 Wn.2d 459, 465, 496 P.3d 1183 (2021).

n.1, 928–29, 376 P.3d 1163 (2016). These fees must be imposed "irrespective of a defendant's ability to pay." State v. Lundy, 176 Wn. App. 96, 103, 308 P.3d 755 (2013). As of June 7, 2018, non-restitution legal financial obligations do not accrue interest. RCW 10.82.090. Additionally, the DNA fee is not to be imposed if a sample has already been collected from an individual because of a prior conviction. State v. Ramirez, 191 Wn.2d 732, 747, 426 P.3d 714 (2018).

As Clement's challenge is grounded in our state's excessive fines clause, we must begin by determining whether either the DNA collection fee or CVA are punitive before proceeding to the full constitutional analysis. City of Seattle v. Long, 198 Wn.2d 136, 163, 493 P.3d 94 (2021) (the first step in an excessive fines inquiry is whether the state action constitutes punishment).

A. DNA Collection Fee

RCW 43.43.7541, which authorizes the DNA collection fee, states in relevant part:

> Every sentence imposed for a crime specified in RCW 43.43.754 must include a fee of one hundred dollars unless the state has previously collected the offender's DNA as a result of a prior conviction. The fee is a court-ordered legal financial obligation as defined in RCW 9.94A.030 and other applicable law.

The State accurately cites to State v. Brewster which expressly held "[t]he DNA collection fee is not punitive." 152 Wn. App. 856, 861, 218 P.3d 249 (2009). In regard to the intent of the legislature in enacting the DNA fee, this court concluded that:

> The DNA collection fee serves to fund the collection of samples and the maintenance and operation of DNA databases. The legislature has repeatedly found that DNA databases are important tools in

criminal investigations, in the exclusion of individuals who are the subject of investigation or prosecution, and in detecting recidivist acts. The databases also facilitate the identification of missing persons and unidentified human remains. These are no punitive purposes.

Id. at 860.

The Brewster court went on to reject the claim that the DNA fee statute was so punitive as to negate legislature's regulatory intent. Id. at 860–61. Division II of this court recently reiterated that the DNA fee (and CVA) are not punitive. State v. Mathers, 193 Wn. App. 913, 920, 376 P.3d 1163 (2016). By following our precedent, we similarly conclude that the DNA fee is non punitive.

B. Crime Victim Assessment

The CVA[4] is derived from RCW 7.68.035, which states in relevant portion:

(1)(a) When any person is found guilty in any superior court of having committed a crime, except as provided in subsection (2) of this section, there shall be imposed by the court upon such convicted person a penalty assessment. The assessment shall be in addition to any other penalty or fine imposed by law and shall be five hundred dollars for each case or cause of action that includes one or more convictions of a felony or gross misdemeanor and two hundred fifty dollars for any case or cause of action that includes convictions of only one or more misdemeanors.[5]

We begin by acknowledging our court's opinion in Mathers which clearly provided "[t]he [CVA] fee is also not punitive in nature." 193 Wn. App. at 920. This is supported by our Supreme Court's analysis in State v. Humphrey. 139 Wn.2d 53, 983 P.2d 1118 (1999). In Humphrey, the Supreme Court clarified that the

---

[4] Trial courts, and different panels of this court, alternately refer to the mandatory fee imposed pursuant to RCW 7.68.035 as the "crime victim assessment," CVA, or "victim penalty assessment," VPA.

[5] The CVA imposed in Clement's case was in the amount of $500 because the crime of conviction, robbery in the second degree, is a Class B felony. RCW 9A.56.210.

amendment increasing the CVA from $100 to $500 established a new liability, not a penalty. Id. at 62. Its comment in Humphrey that the CVA does not "constitute punishment for the purposes of ex post facto determination" indicates the assessment is properly characterized as non-punitive in our constitutional review as to the excessive fines clause. Id. at 62, n.1.

While Clement suggests in passing that any case law declaring either of these fees to be non-punitive should be disregarded because it predates the holding in Long, he fails to offer argument as to how this court could disregard binding legal precedent. "A Washington Supreme Court decision is binding on all lower courts in the state." Mathers, 193 Wn. App. at 923 (citing 1000 Va. Ltd. P'ship v. Vertecs Corp., 158 Wn.2d 566, 146 P.3d 423 (2006)). In Long, the Supreme Court expressly found that the impoundment fee for violating a parking law was partially punitive, which allowed the court to proceed with consideration of the excessive fines challenge. 198 Wn.2d at 163. However, the body of case law that has examined both the CVA and DNA collection fees has not found either to be partially punitive[6], which is a critical distinction in the context of excessive fines clause analysis.

---

[6] Uniform collection of the CVA in every criminal conviction is for the purpose of funding "support of comprehensive programs to encourage and facilitate testimony by the victims of crimes and witnesses to crimes." RCW 7.68.035(4).

The DNA collection fee is to recover the cost of collecting and analyzing DNA samples for entry into the state DNA database. Under the plain language of the DNA collection fee statute, it is not to be imposed where the state has previously collected a DNA sample from the same individual. RCW 43.43.7541.

II.      Excessive Fines

Though Clement attempts to argue that our State's excessive fine clause is more protective than its federal counterpart in the Eighth Amendment to the United States Constitution, he fails to provide sufficient analysis to persuade us. Both clauses use nearly identical language; the federal constitution provides, "Excessive bail shall not be required, nor excessive fines imposed, nor cruel and unusual punishments inflicted" and the Washington State Constitution states, "Excessive bail shall not be required, excessive fines imposed, nor cruel punishment inflicted." U.S. CONST. amend. VIII; WASH. CONST. art. I, § 14. Additionally, our state's highest court recently held that, in the absence of Gunwall[7] analysis from the parties, the language in our state constitution as to excessive fines is identical to that contained in the federal constitution. See Long, 198 Wn.2d at 159 ("Absent support for an independent analysis, we view article I, section 14 [of the Washington State Constitution] and the Eighth Amendment as coextensive for the purposes of excessive fines."). The Due Process Clause of the Fourteenth Amendment to the United States Constitution makes the Eighth Amendment applicable to the states. Cooper Indus., Inc. v. Leatherman Tool Grp., Inc., 532 U.S. 424, 433–34, 121 S. Ct. 1678, 149 L. Ed. 2d 674 (2001).

Clement undertakes a cursory Gunwall analysis in his opening brief; setting out the test and simply asserting that our state clause is more protective. However, he offers no authority as to why we should depart from the determination in Long

---

[7] State v. Gunwall, 106 Wn.2d 54, 720 P.2d 808 (1986).

in light of the identical language in both constitutions. 198 Wn.2d at 159. The Supreme Court made clear in Long:

> When a party urges a different or more protective interpretation under our state constitution for the first time, we expect supportive briefing, particularly when the language of that provision is identical to the United States constitutional provision.

Id. Despite this directive, Clement focuses his argument on how article I, section 14 generally has been more protective than the Eighth Amendment, by offering analysis as to the cruel punishment clause, rather than the excessive fines clause. See State v. Roberts, 142 Wn.2d 471, 506, 14 P.3d 713 (2000) ("Washington State Constitution's cruel punishment clause often provides greater protection than the Eighth Amendment."). However, the language in the cruel punishment clauses of the federal and state constitutions is notably different, unlike the nearly identical language used as to excessive fines. Clement only provides us with conclusory statements as to the Gunwall test upon which he bases his claim of greater state protection. We decline his invitation to undertake such inquiry after he has failed to engage in the proper analysis specific to his claim. See State v. Dhaliwal, 150 Wn.2d 559, 575, 79 P.3d 432 (2003) (Supreme Court declining to reach whether state constitution provides greater protection than Sixth Amendment to the United States Constitution because the appellant failed to provide analysis applicable to Gunwall factors).

"The excessive fines clause 'limits the government's power to extract payments, whether in cash or in kind, as punishment for some offense.'" Long, 198 Wn.2d at 159 (internal quotation marks omitted) (quoting Austin v. United States, 509 U.S. 602, 609–10, 113 S. Ct. 2801, 125 L. Ed. 2d 488 (1993)).

Therefore, a qualifying "fine" for excessive fines purposes is a payment to a sovereign as punishment for an offense. Id. It is self-evident that to trigger the Eighth Amendment's excessive fines clause, a sanction must be a "fine" and it must be "excessive." Id. at 162. This is because the concept of the excessive fines clause is to limit a sovereign's power to "extract" payments as a form of punishment. Id. 162–63. As previously explained, the first step in considering a challenge under the excessive fines clause is to determine whether the state action constitutes "punishment" or, said another way, is punitive. Id. at 163. If the action in question is even partially punitive, it also falls within the purview of the excessive fines clause. Id. The second step is to then inquire as to whether the fine at issue is constitutionally excessive. Id. We engage in this sort of constitutional question de novo. State v. McCuiston, 174 Wn.2d 369, 387, 275 P.3d 1092 (2012). Statutes are presumed constitutional, and the challenger bears the burden to prove otherwise. Id.

Here, as the State points out, Clement fails to establish that either the CVA or DNA fee are punitive in light of our state's precedent. As such, neither constitutes a fine for purposes of excessive fines clause analysis. While the State identified precedent in its briefing declaring that both the DNA fee and the CVA are not punitive, Clement's only response was to note that the cited cases were issued before the decision in Long. When a constitutional challenge of this nature is raised, appellants should be prepared to acknowledge precedent and provide argument as to why it is distinguishable or should be overturned. See State v. Otton, 185 Wn.2d 673, 678, 374 P.3d 1108 (2016) ("The question is not whether

- 8 -

we would make the same decision if the issue presented were a matter of first impression. Instead, the question is whether the prior decision is so problematic that it <u>must</u> be rejected, despite the many benefits of adhering to precedent.").

In the absence of persuasive argument or authority as to his claim that, despite the Supreme Court's holding in <u>Long</u>, the state excessive fines clause is more protective than the federal clause, or in support of his suggestion that we should depart from case law expressly holding that the two mandatory fines are not punitive, we end our inquiry into Clement's challenge here. <u>See</u> <u>Mathers</u>, 193 Wn. App. at 920; <u>Humphrey</u>. 139 Wn.2d at 62; <u>Brewster</u>, 152 Wn. App. at 861. We follow our established precedent holding that the CVA and DNA fee are non-punitive and, as such, do not constitute penalties for purposes of the excessive fines clause.[8]

III.     Racial Disproportionality

Finally, Clement also avers that "fines and fees continue to disproportionately affect communities of color." In his briefing, however, Clement frames this argument by incorporating it into his excessive fines challenge, in particular that the racially disproportionate impact should require an inquiry into

---

[8] Clement also argues that the imposition of the DNA collection fee and CVA have a disproportional impact based on an individual's ability to pay. We consider this portion of his argument as urging consideration of the instrumentality and proportionality factors set out in <u>Tellevik v. Real Prop. Known as 6717 100th St. S.W. Located in Pierce County</u>, 83 Wn. App. 366, 921 P.2d 1088 (1996). While these factors predate <u>Long</u>'s clarification of the test for excessive fines analysis in Washington, <u>Long</u> incorporates review of instrumentality and proportionality factors. Under either posture, we would still be required to first evaluate the punitive nature of the challenged assessment. <u>Long</u>, 198 Wn.2d at 159; <u>see</u> <u>also</u> <u>State ex rel. Wash. State Pub. Disclosure Comm'n v. Food Democracy Action!</u>, 5 Wn. App. 2d 542, 552–53, 427 P.3d 699 (2018). As such, Clement's failure to establish that either the DNA collection fee or CVA are punitive similarly prevents us from reviewing the proportionality factors.

individual ability to pay. Because this argument is captured within his broader excessive fines challenge, the initial determination as to the non-punitive nature of each assessment similarly prevents us from moving forward with additional analysis.

Clement provides a number of secondary sources in support of his assertion that lack of individualized inquiry as to ability to pay disproportionally impacts communities of color. See Daniel S. Harawa, How Much Is Too Much? A Test to Protect Against Excessive Fines, 81 Ohio St. L. J. 65 (2020); CRIMINAL JUSTICE POLICY PROGRAM, RACIAL DISPARITIES IN THE MASS. CRIMINAL SYS., CONFRONTING CRIMINAL JUSTICE DEBT: A GUIDE FOR POLICY REFORM (2016). However, much of this data relates to disproportionate police contacts and uses of force experienced by historically marginalized communities. This is true, too, of disproportionate representation of people of color in our jails and state prison system, compared to overall community demographics. See KOREMATSU CTR. FOR LAW AND EQUITY, RACE AND WASHINGTON'S CRIMINAL JUSTICE SYSTEM: 2021 REPORT TO THE WASHINGTON SUPREME COURT (2021). This suggests that the uniform imposition of mandatory fees at the time of conviction is a downstream symptom of systemic bias in the criminal legal system, as opposed to instances where the disproportionality is predicated on variable discretion as to the imposition of the fees. See State v. Gregory, 192 Wn.2d 1, 22, 427 P.3d 621 (2018).

Clement cites to other publications calling on the judicial and legal community to work together on racial justice and other recent directives. We are not unmoved by such calls to action, but are compelled to remind Clement that the

role of an intermediate appellate court such as this one is limited to applying the law as it exists to the record before us. "An intermediate appellate court does not have the option of disregarding a higher state court's decision that has not been overruled, no matter how old the precedent may be." State v. Winborne, 4. Wn. App. 2d 147, 175, 420 P.3d 707 (2018).

In the absence of any authority which would allow us to consider either assessment as punitive for purposes of engaging in excessive fines clause analysis, we affirm.

WE CONCUR: